Case Lorenzo Calmo v. Garland is submitted on the briefs. We'll go to Workman v. Dearborn, and we'll take a brief break after this case. Thank you. Yes, sir. Your Honor, since I filed a notice of appeal in this case almost two years ago, I've been wondering what I would say if the first question asked of me was, why is this court being asked to decide a $9,000 dispute? My answer is the same as my reason for filing the appeal. This case is not about $9,000. It is about fair versus unfair and what are the actual obligations of an ERISA claimant's fiduciary. There are two distinct issues now before this court. Do the facts of this case mandate that pursuant to California Insurance Code Section 1017.5 that interest be paid on Ms. Workman's life benefits calculated from her husband's date of death? And the separate issue is, and perhaps more importantly as a precedential issue, how should Fort Dearborn in its capacity as an ERISA fiduciary have fulfilled its higher-than-marketplace obligations to Ms. Workman to have decided her interest claim? Because of the intricacies of statutory construction and conflict preemption issues, a significant majority of the party's briefing focuses on the California statute. While resolving that issue in Ms. Workman's favor would resolve the dispute involving her entitlement to interest on the life benefits, the more overarching issues pertain to the duties of an ERISA fiduciary. As such, I would like to briefly touch on the California statute and then discuss the breach of fiduciary duty claim at more length. Regarding the California statute, Fort Dearborn argues both that the statute is preempted because it affords a remedy to Ms. Workman beyond what ERISA permits, and that even if not preempted, the statutorily mandated interest is computed from the date of a claim submission, not from the date of the insured death. Fort Dearborn is wrong on both accounts. The legislative history of the statute establishes why Fort Dearborn is valid. Well, let's start with the language, if you don't mind. Certainly, Your Honor. That's where we usually start. Okay. Well, the language of the statute talks about fails or refuses. There's no mention in the statute about notice. And as we know from statutory interpretation, the court is supposed to review the language that is there. And if there is ambiguity, though, I would argue that the legislative history ends any ambiguity. When the statute was first proposed, it had a flat 7% rate paid on unpaid life benefits. But the legislature became aware, through arguments advanced by lobbyists, that that could be unfair, as that flat 7% rate in a life case might cause a life claimant to delay making a claim if interest rates were much lower than 7%. On the other hand, it could cause an insurer to delay paying a claim if rates were much lower. So, the initial draft of the statute was changed, and it was enacted in a new way, such that there was a compromise. There was no flat rate, but rather the benefits paid fluctuated along with interest rates. And the- Does not that statute, therefore, then supplement the ERISA benefits that are required? It amounts to a supplement, does it not? A supplement? I don't know- Essentially, it supplements the obligations of Dearborn under ERISA. As you argue the state statute, you're essentially- that law, the California law, then either duplicates or supplements, and you're saying supplants the obligations compelled under ERISA under the federal statute, does it not? Your Honor, I would respectfully disagree. I don't think it is a remedy. I don't think it supplements the benefits that are paid. What it does is say, if there's a delay, what we are going to do is have the insurance carrier make the insured whole by having them pay the exact same amount that it would pay to any other insured if the money was left on account. But it does- essentially, the state statute then subjects the insurer to additional liability that was not anticipated in the original benefit, isn't that correct? Well, Your Honor, once again, I would disagree. It's not additional liability because it's up to the insurer to offer to insureds the right to leave their benefits on account with the insurance company. Nobody forces- But does your argument depend upon the policy permitting that? I mean, I presume that every life insurance policy does not permit that, but you say this one does? This one does. But if it didn't? What if it didn't? Well, I think if it didn't, then there would be no interest rate to pay. Fort Dearborn- Why not? I'm sorry. I don't understand. Why not? Because the statute says that the interest rate paid is what the insurer pays to other insureds who leave their funds on account. The insurance company would absolutely have the right to say, we choose not to hold anybody's funds. We are going to pay everybody a lump sum. We will not pay interest. Go elsewhere with your money. However, that's never going to happen. But in any event, this provision is an insurance regulation that tells the insurer essentially what the benefit has to be. It doesn't direct that it has to be in the contract, but it's essentially saying that as part of any insurance policy, this is going to be read into it, i.e., you have to pay insurance. You have to pay the interest. Yes, Your Honor. Absolutely. And many cases across the country have looked at these identical statutes and held them to be not a remedial provision. It doesn't depend on anybody bringing a lawsuit or it's not a remedy for a lawsuit or anything for, it's not a remedy for wrongdoing? Correct. There is no wrongdoing required. This is what I would call a no harm, no foul statute. If the insured makes the claim within 30 days and the payment is made, there is no interest. And this policy didn't require that the claim be made within 30 days anyway, right? It required that it be made within 90 days. Well, yes, but that's a distinction without a difference, Your Honor. Yeah, but it seems to me to run the other direction. I mean, you can fully comply with this policy. If what they're trying to read in is claim, then it's inherent in their policy that they would have to pay at least 60 days worth of interest because there's no claim required for 90 days. Now, there is notice required, so I suppose you could re-notice it, but then you're making a choice with regard to the statute about how to read something and it's not there. You could re-notice and you could re-claim and they're not the same, right? Under this policy, they're not the same. That's true, Your Honor, but I don't think it really makes any difference in that the insurance company, after 30 days, is paying to the insured what it would pay to any other insured. Remember, the insurance company is setting up this program with the intent to make a profit. It is inviting insureds to leave their money with the insurance company in the hope that they do. In this case, over the 14 years, the insurance company made between $16,000 and $21,000 depending upon how you compound the rate. All right. Now, it seems to me the strongest language argument made is that the statute says what's payable and nothing is payable until a claim has been made. Is that right? Yes. So, what about that? Sorry, Your Honor. I didn't quite understand the intent of the question. So, the problem is that the statute only requires that this be done if the payment was payable. Well, yes. Payable, which means it's only triggered then, obviously, under 10172.5, the statute you cited. It's only triggered if the insurer has received any claim, any notice. Isn't that correct? Yes. So, what if it's not 14 years? What if it's 25 years? It continues to run indefinitely. Is that correct? Absolutely. And they are holding the insured's money, and they pay them the same rate that they would pay to any other insured. That's why the California legislature created statutes for health insurance and disability insurance, which have flat 10 percent rates. And they specifically require notice. The interest is not run in the health and disability statute until a claim has been made. But the legislator acknowledged the difference for life insurance benefits, that they're not paid out the way disability is to provide covering current expenses or to repay health providers. They're paid in large sums, and the insureds don't want to all spend them at one time. So, Mr. Cantor, may I ask you a question? Certainly. I don't think you've addressed this. What if there weren't any 10172.5 of the insurance code? Suppose that didn't exist. What obligation would Dearborn have to pay interest to Ms. Workman? Well, thank you, Your Honor. That was the overarching question that I think should be looked at. Where in ERISA is there any obligation to pay interest? Well, under ERISA, Fort Dearborn is a claims fiduciary. In Glenview Met Life, the court said that an ERISA fiduciary has a higher-than-marketplace obligation. They are a trustee of a trust. But they're not a fiduciary in every respect, right? They're a fiduciary as to some things but not others. And the notion that they have an obligation not to make a profit on life insurance proceeds seems a difficult one. Oh, Your Honor, I am absolutely not arguing they don't have a right to make a profit. That is contrary to our argument completely. What we are saying is that they're not entitled to a windfall. If you look at Justice Sotomayor's quote in the Henry v. Chamberlain case, she says that's what ERISA is about, to make sure that neither party has a windfall. Here, Fort Dearborn is saying to every insured, using this instance, if you leave $37,000 Even as a practical matter, after some amount of time, presumably, the company makes an request or claimed and puts the money into its general funds and it's not sitting there anymore. It's being used for other things. Suppose they take the money and they say, oh, well, nobody's shown up after 90 days. There's no claim. I think I'll go and buy a desk. Your Honor, the Supreme Court dealt with that exact issue in the Unum v. Ward case, applying California's notice prejudice to the obligation to pay the claim. Let's not forget, they paid the $37,000 because they had to. Well, I do think the whole notice prejudice point is key to your arguments in various ways. Because otherwise, when I first looked at this case, I thought, well, the insurance company is just being nice to pay her the money, but that's not true. It's a notice prejudice problem. Under California law, it was obligated to pay her the money, even though it was 14 years later. Is that right? That's right. And the same theory applies to interest. As a fiduciary, Fort Dearborn has an obligation to put its insurance or beneficiaries' interest ahead of its own. They have the highest duties under law. We have – well, I asked the question about the $9,000 being brought before this court. The question we've asked in the briefing of Fort Dearborn is, how does a fiduciary not pay to Ms. Workman what it would have paid to anybody else? The lack of notice is – Workman didn't make a claim. I'm sorry? Because Mrs. Workman didn't make a claim for all that time. You haven't answered my question, I don't think, other than to refer to some application of a fiduciary duty as to the basis under ERISA for the obligation of the insurer to pay any interest at all. Your Honor, my response is that Fort Dearborn is not an insurer. Fort Dearborn is a fiduciary, and the Supreme Court has said that fiduciaries have a higher-than-marketplace obligation. Your answer to my question is that the sole basis of the obligation of Dearborn to pay any interest is your concept of fiduciary relationship, which is applied to the obligation to pay a contractual claim, not the management of assets. I think that's an oversimplification, but basically, yes. I think – Okay, fine. When – I'd like to reserve my last minute – or I'll answer your question. I'm sorry, Your Honor. If you'd like to reserve some time, you have a minute left. Okay, thank you. Thank you. Yes, Mr. Jackson. May it please the Court. Thank you, Your Honor. I'd like to start with the preemption issue. Preemption has definitely confused litigants and courts over the years, but in this case, once you get 514, preemption, and the savings clause out of the way, it is a very straightforward issue. Well, but you don't get it out of the way. You have to start with it, it seems to me, and this definitely is a regulation of insurance and is otherwise saved by 514 because it is not simply – and so then the question is whether under 504 – is it 504? 514. 502A. 502A, yes. Whether this is an alternative enforcement mechanism, and the argument is it isn't. It is simply – it isn't speaking to enforcement. It is telling the insurance companies what their obligation is, which is that they have to pay interest at some point, and I don't see why that's not right. It doesn't talk to a cause of action or a claim or a penalty or anything. It is simply a description of what the insurance companies are required to do with regard to life insurance. Why is it different, for example, than the notice prejudice claim, which has been determined not to be preemptive? Because the notice prejudice claim is a simple – it goes to the issue of the defense of the insurer to a claim for benefits. Well, that's one way to look at it. Another way to look at it is to say that it provides a cause of action to a plaintiff who would not otherwise have one by saying that a provision that purports to bar it is no longer barring it. So it's providing a new cause of action. You could look at it that way, but that would be a strange way to look at something that is clearly telling insurance companies what their obligation is prior to any litigation or dispute or anything else. This is what you have to do. That's right, and the courts have distinguished Ward on that basis and Rudell in the same vein. When we're talking about – I thought most courts that have looked at this question have concluded that, in fact, the interest requirements are not covered – are not conflict preemptive because they don't have to do with the change in the enforcement provisions. Well, the Second Circuit reached that conclusion in Williams, Your Honor, without ever – they never asked the question whether it duplicates, supplements, or supplants ERISA's exclusive scheme. I think what the Supreme Court has said with respect to ERISA's exclusivity is when it's time to pay benefits, to deliver that which you have promised to deliver, and the claimant has a beef with what you delivered. You did not deliver what I was entitled to or you did not deliver it in a timely basis. You have to proceed through ERISA's exclusive enforcement mechanism, not state law. This thing doesn't apply to any beef. It's just telling the insurance company what their obligation is. Well, plain to file a claim under this statute saying – That's true, and they would also file a claim in another instance and be met with a – and they say, well, yes, I know my time is run, but I'm filing it anyway because there was no prejudice, and so – But the Supreme Court said the benefit that the claimant gets in that situation under Ward and also under Rudell and under Rush Prudential is the same benefit that ERISA provides. Nothing more, nothing different. This is more – May I ask you a question? Yes, Your Honor. You paid $179 in interest, correct? Correct. How did you calculate that? Upon what basis? Where in ERISA – Did you point to any provision of ERISA which told you what to pay the $179 for? No, Your Honor. I mean, insurance companies – Is that totally an invention of the insurance company? Well, the market forces exist so that the insurance companies will pay interest at a market rate. That's what they say. What was the market rate that you used? It was the market rate which Dearborn sets internally for complying with the California statute. Mr. Decker, the district court only addressed the issue of express preemption under Section 514A. It did not address the matter of conflict preemption under 502A. Is that correct? That's correct, Your Honor. And isn't the analysis really under 502A, as Judge Burson has suggested, in terms of conflict preemption? Absolutely. And the terminology gets mixed up between the courts, whether you call it conflict. Yes. I like to call it 502A preemption. Yes. The provision is clear. But that's the only question, Your Honor, whether this is a – whether it enlarges the claim beyond the benefits available in an action brought under Section 502A, and it clearly does. I mean, if you look at page 14 of the plaintiff's brief, they acknowledge that pursuant to the statute, the claimant gets more than she would otherwise be entitled to under risk of death. Suppose this provision had been written to say that any life insurance contract has to provide exactly what it says here. Would that be okay? No, Your Honor. Why? Because that's essentially what it does. But we're swallowing complete preemption. What if a contract were to say, as pursuant to Cleghorn or Elliott, listen, if you do not pay benefits in a timely manner, you must pay consequential damages and punitive damages to the insured. That's essentially the same thing. That conflicts with ERISA's desire that the enforcement mechanism be exclusive. ERISA wants and Congress wanted, when it's time to pay benefits, what the insurance company looks to is the plan and ERISA. I know. That's why I was posing the question the way I did. What if it provided that this had to be in the contract? As it does provide with regard to other, it does prescribe various provisions in the policy, right? Right. And if you read Rush Prudential, what the court says is, as long as the benefit is the same, the states can regulate insurance. And it was the same in Rush Prudential. It was the same in Ward. It was the same in Rodale. It's not here. It's more. But the benefit is, if the benefit under state law has to include interest, then why doesn't it include it? I mean, the interest is simply an attempt to protect the, to make the benefit be the same thing in terms of the time value of money. It's not an attempt to provide, to enforce the benefit or to provide a penalty on the benefit. It's simply to say that you can't essentially diminish the benefit over time. That's what interest means. That's what it's about. Well, the intent is to disincentivize the intentional withholding of the benefits. But again, I think that analysis swallows 502A preemption and says that a state could just say you must pay punitive damages, you must pay consequential damages, you must put that in your policy in order to do business in our state. That is what the Supreme Court and this Court has said you can't do. You can't add to it. You can't supplement it. You can't duplicate it. Could we go to the statute itself? Yes, Your Honor. And you wanted to start with the language, and I think the key language is, there's a lot of problems with plaintiff's interpretation. I think the main problem is it's an unreasonable interpretation of the word fail. But one of your problems is that if it isn't running from death, what is it running from? It's running from death when they fail or refuse to pay a claim within 30 days. Okay, but here, for example, as I said, as I understand it, the contract says you have to notify of the death within, I think, 20 days and file a claim within 90 days. Is that right? Right, that's right. Which one counts? The first or the second? One counts. Yes. In other words, suppose they don't do the first, but they do do the second. Does the statute apply or not? From when? From when would you be counting them? What are you reading into the statute, that it needs to be 30 days from the notice, 30 days from the claim, or what? Well, I think that's why the legislation used the term fail or refuses, right? I mean, the 1973 proposal, as Mr. Cantor points out, that took place before this one, used language about the – All right, suppose under your policy somebody doesn't give you the 20-day notice but does file a claim within 90 days. Do you owe them an interest or not? No, not under the statute because there was no – you have to look and see if there's a failure or a refusal. There has to be – there has to certainly be notice that someone wants to get – But if they file it within 90 days, then they're complying with the provision. So – That's right. And so why isn't there a problem then? So why don't they get interest within – between 30 and 90 days? Because there was no failure or refusal. You first look in the 30 days after the death to see if there's a failure or refusal. All right, suppose they give you the notice after 20 days. You still wouldn't pay as many – and you still have no obligation? Oh, you do have an obligation in that case under the statute. But there's no claim yet. So, again, I think the legislature – All I'm pointing out is that you have to make something up. Yes. Well, no, you have to have – you have to have either some form of notice or some expression of desire that the claim be paid. I think by using the term fail, the legislature was leading it to – But under your policy, you have no obligation to pay them unless they make a claim, so the notice isn't good enough. So, therefore, you don't – even if they give you a notice, you don't have to pay them until the 90 days run? If they give you notice within the 30 days, a notice of a claim – Well, they haven't failed to refuse because there's no claim. I thought you said that there was a claim. Later. You have to file a claim. At the deadline, 90 days. But then there's no failure or refusal. So even if you have the notice, you still don't owe the interest. I don't think you really need to decide that in this case, but I do think that's what the legislature was leaving for the courts, to decide what triggers it. And, again, the 1973 statute triggered it by proof of everything – with everything that the insurance company required. So that was a very different provision, right? I mean, this provision is trying to incentivize timely payment of claim. And when you're trying to do that, you want both sides working together to go from notice to proof, right? It's just a little odd that if they meant after notice or they meant after claim, they didn't say one or the other. They said after death. Well, they said fail or refuse. I know, but that's indirect. It's putting an interpretive burden on something that could be said very clearly, and that isn't the same. That's what bothers me. Notice and claim are not the same. I agree. Notice and proof are different, and that's what I'm saying, Your Honor. The 1973 version triggered it from proof. And if you're trying to incentivize both parties to get the proof in, the insurer needs to be telling the claimant, get the proof in after it gets the notice, right? So that doesn't serve that purpose to run it from proof. So by using the term fail or refuse – and, again, you can't interpret fail to mean not doing something that you had no idea you were supposed to do. That term is used in all kinds of statutes. I just Googled it. I mean, it's all over the place. If you interpret it that way, that is hugely problematic. So they were trying to incentivize both parties to get the darn thing done within the 30 days. And so by using fail or refuse, that's exactly what they did. The prior version – and that is throughout, from the beginning to the end of the legislative history, the clear intent of what was going on here. Right from Mr. Leary's letter through Mr. Cerotti's announcement to the legislature when he urged them to adopt it, the purpose of this legislation is to provide a disincentive to insurance companies intentionally withholding proceeds from beneficiaries. But they did during – I mean, California legislative history is pretty weird anyway. I remember going to people's offices to collect it because it doesn't really exist in any official place. But the one thing that is clear here is that the language was changed to 30 days – from 30 days after the date of claim. Was that the original language? No, no, the original language – and that was in 73. No, no, I mean during the legislative development. No, that was never changed during this legislative history. The only change was the interest rate, okay? And Mr. Cantor is arguing that the fluctuating interest rate proves that the legislator intended for you to interpret fail in an unreasonable way. That's not so. They were trying to incentivize both parties to get these claims paid. And the fluctuating rate makes all the sense in the world no matter when the time period runs from, right? Because during that stressful period for a beneficiary, if the beneficiary knows they're getting interest no matter what at a bank rate that the insurance company sets, there's no incentive for them to get that proof in to file that claim because they can just bank that interest during that whole period. And so there's no connection. The only connection that Mr. Cantor raises is that using a fluctuating rate, which the legislature decided on, somehow shows that there was this intent to interpret the term fail in an unreasonable way and not require any notice of a claim. That's simply not true. Incentivizing both parties to get the job done here, that fluctuating rate works no matter what because, again, it's key to market considerations. When you un-key that rate to market considerations, you're going to screw up the incentives one way or the other. And so that's what they were trying to do. It looks like my time is running out, Your Honors. Thank you very much. Yes, Mr. Cantor. Yes. So not to start, Judge B, I don't think I adequately responded to your question. It's Judge Beah, by the way. I sincerely apologize. Judge Beah, I don't think I adequately responded to your question about whether ERISA requires interest be paid. No, it does not. It does require, as the Supreme Court has said, that an ERISA fiduciary put their interest of the beneficiaries above its own, a higher-than-marketplace duty, the highest duty in the law. And Justice Sotomayor has said the way to respond, the way to look at this is to look at who is getting a windfall. In this case, if Fort Dearborn is holding Ms. Workman's money for 14 years and earns $16,000 and wants to keep it all, that is a windfall. What we are asking is what it would do for any other insured and share those profits. It would give any other insured $9,000. All we're looking for from Fort Dearborn is that as a fiduciary, it gives her the same $9,000 it would give to any other insured who left their money on deposit. I assume my time is up. Thank you very much for listening today. Thank you both. The case of Workman v. Dearborn National Insurance Company is submitted, and we will take a short break. Thank you.
judges: BERZON, BEA, Bennett